IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHILLIP KLINK, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| NORMAN WOOD, in his individual capacity as the Town of Smyrna, Delaware Police Chief | ) | |
| TORRIE JAMES, in his individual capacity as a Town of Smyrna, Delaware Police Lieutenant | ) | Civil Action No. 16-1217-GMS |
| SHAWN BENTON, in his individual capacity as a Town of Smyrna, Delaware Police Corporal | ) | |
| and | ) | |
| THE TOWN OF SMYRNA, DELAWARE | ) | |
| Defendants. | ) | |

**MEMORANDUM**

I. **INTRODUCTION**

On December 16, 2016, Phillip Klink filed a complaint against Defendants Norman Wood, Torrie James, Shawn Benton, and the Town of Smyrna, Delaware ("the Town") raising a due process claim pursuant to 42 U.S.C. §§ 1983 and 1988 and a claim pursuant to the Delaware Whistleblowers' Protection Act. (D.I. 1 ¶ 69–73, 74–78.) On February 15, 2017, Defendants filed a Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (D.I. 5.) On March 1, 2017, Klink responded by filing his first amended complaint to cure his pleading defects. (D.I. 6.) On March 15, 2017, Defendants filed a second Motion to Dismiss for Failure to State a Claim that is currently pending before the court. (D.I. 7.) No scheduling order has been entered

in the instant case. On May 15, 2017, the court referred the parties to Chief Magistrate Judge Mary Pat Thynge for the purpose of exploring Alternative Dispute Resolution. On June 15, 2017, the parties engaged in a telephonic mediation conference with Chief Judge Thynge. No settlement ensued. (D.I. 15.)

Before the court is Klink's Motion for Leave to Amend the First Amended Complaint[1] filed on August 8, 2017, which seeks to voluntarily dismiss two Defendants—James and Benton—and to incorporate facts from a transcript of recorded conversations between Klink and Defendants produced to Klink on June 1, 2017. (D.I. 17 a 4.) Defendants oppose Klink's Motion. (D.I. 18.) For the reasons that follow, the court will grant Klink's Motion for Leave to Amend. (D.I. 16.)

## II. BACKGROUND

Klink was a sworn police officer with the Smyrna Police Department ("Smyrna PD") for twenty years. (D.I. 16-1 at ¶8-9.) Prior to his departure from the Smyrna PD, Klink was a Lieutenant serving under Defendant Wood. (D.I. ¶ 9.) In the summer of 2016, the Smyrna PD union returned a vote of "no confidence" concerning Wood and the misconduct related to his leadership of the Smyrna PD. (D.I. 16-1 at ¶ 14, 23.) Wood's alleged misconduct also involved Defendant James. (D.I. 16-1 at ¶ 25.) Following the vote, the Delaware Attorney General's office began investigating Wood, James and the Smyrna PD. (D.I. 16-1 ¶ 30.) Klink alleged that his relationship with Wood and James began to deteriorate after the vote. (D.I. 16-1 at ¶ 28.) For example, Klink claimed that Wood repeatedly denied his requests for police training, which was necessary for Klink to maintain his certification to be a police officer in Delaware. (D.I. 16-1 at ¶

---

[1] Plaintiff's counsel has failed to follow D. Del. LR 15.1(b) which requires the party seeking to amend to include a proposed amended pleading indicating in what respect it differs from the pleading that it seeks to amend by bracketing or striking through materials to be deleted and underlining materials to be added. This may seem like a small thing—a nudge. Rest assured it is not! Rules of procedure exist for a reason. One of the reasons, in this instance, is to enable the court to expeditiously and efficiently identify the changes a party proposes to make to a pleading without having to rummage unguided through the filings at issue. These small, sometimes not, bites of time add up and can be quite debilitating—something like lingchi or death by a thousand cuts. Note to the Bar –please follow the rules!

2

29.) Klink alleged that Wood, or someone acting on Wood's behalf, placed a citizen complaint filed against Defendant Benton in Klink's office desk drawer on July 19, 2016. (D.I. 16-1 at ¶ 22.) The citizen complaint was received on or around May 2015 and contained allegations that Benton engaged in sexual relations while on-duty. (D.I. 16-1 at ¶ 11.) The citizen complaint, to Klink's knowledge, was not addressed by the Town or Wood. (D.I. 16-1 at ¶ 14-16.) Klink believed the citizen complaint was placed in his drawer in an effort to frame him and to cause him to resign or be terminated for failing to properly address the citizen complaint. (D.I. 16-1 at ¶ 22.)

In October of 2016, Benton came into Klink's office to discuss Wood and the Smyrna PD—specifically issues related to Klink's knowledge and discussions about Wood's misconduct. (D.I. 16-1 ¶ 33-34.) Unbeknownst to Klink, and without Klink's consent, Benton recorded their conversation and shared it with Wood. (D.I. 16-1 at ¶ 33–35.) The next day, Wood summoned Klink into his office to discuss rumors of Klink's discussions about Wood's misconduct with other police officers. (D.I. 16-1 at ¶ 40–41.) Again, unbeknownst to Klink, Wood recorded their conversation and Klink alleges Wood was in control of the recording device throughout the conversation. (D.I. 16-1 at ¶ 42.) Wood questioned Klink about his conversations with other officers regarding Wood's alleged misconduct and played the recorded conversation between Klink and Benton from the previous day. (D.I. 16-1 at Ex. A at 18–21.)

Wood told Klink that he must either resign on the spot or he would be put on administrative leave and suspended pending termination. (D.I. 16-1 at Ex. A at 24, 33.) Klink asked to speak with an attorney and his wife. (D.I. 16-1 at Ex. A at 26.) After telling Klink to "[m]ake [his] own decision," Wood permitted Klink to speak with his wife privately, but only permitted Klink to speak with an attorney in Wood's presence and he intervened on the phone call. (D.I. 16-1 at Ex. A at 32-33.)

3

After Klink's phone conversations, Klink continued to express concerns about resigning and requested more time to make a decision. (D.I. 16-1 at Ex. A at 33–34.) Klink was told that his only alternative was to be placed on administrative leave for "telling some of [his] junior officer's things that [Klink] shouldn't be telling them." (D.I. 16-1 at Ex. A at 34.) After engaging in some discussion about Klink's retirement date, Klink resigned. (D.I. 16-1 at Ex. A. at 37.) Klink attempted to get his personal belongings from his office on his way out, but Wood informed him that his computer and building access had already been terminated. (D.I. 16-1 at ¶ 48.) Wood used his credentials to let Klink into his office and watched as he gathered his belongings while instructing him that his desk was off limits. (D.I. 16-1 at ¶ 49–52.)

Later that same day, Wood engaged in yet another recorded conversation with Klink—this time over the phone. (D.I. 16-1 at ¶ 54–56.) Wood called Klink to tell him that he would give him two days to decide if Klink wanted to have a hearing instead of proceeding with his resignation. (D.I. 16-1 at Ex. A at 43.) Klink did not opt to rescind his resignation. (D.I. 16-1 at Ex. A at 43.)

Two weeks later, Klink spoke with an investigator with the Delaware Attorney General's office and corroborated various allegations of Wood's and James' conduct at the Smyrna PD. (D.I. 16-1 at ¶ 58–59.)

Klink filed the instant suit alleging violations of his procedural due process rights under 42 U.S.C. §§ 1983 and 1988, and a claim against the Town under Delaware Whistleblowers' Protection Act. (D.I. 16-1 at ¶ 60–65, 66–71.) Defendants argue that they are protected by the doctrine of qualified immunity because Klink voluntarily resigned from his position and, as a result, his complaint should be dismissed. (D.I. 17.)

4

## III. STANDARD OF REVIEW

The court is to "freely give leave" to parties to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Such equitable considerations include the existence or absence of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV. DISCUSSION

Klink asks the court to grant him leave to amend his First Amended Complaint to dismiss James and Benton as Defendants and to include additional facts to support his due process and Delaware Whistleblowers' Protection Act claims. Klink contends that amending his First Amended Complaint would neither be futile nor would the amendment result in undue prejudice to the Defendants. Defendants argue that permitting the amendment would be futile because it does not offer additional facts that refute their protection under the doctrine of qualified immunity and the amendment would result in undue prejudice.

For the reasons that follow, the court will grant Klink's Motion to Amend his First Amended Complaint.

### A. <u>Klink's Motion to Amend is Not Futile</u>

An amendment will be futile if it could not survive a motion to dismiss. *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003). "To determine whether a proposed amendment is futile, the Court applies the standards for a Rule 12(b)(6) motion to dismiss and must decide whether, accepting all the well-pleaded facts of the proposed amendments as true, the party states a claim upon which relief can be granted." *Lynch v. Coinmaster USA, Inc.*, 2007 WL

5

39433, at *2 (D. Del. Jan. 4, 2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are inadequate to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (2009).

### 1. Qualified Immunity

Defendants argue that the complaints against them are official capacity claims barred by the doctrine of qualified immunity. (D.I. 7 at 6.) Defendants claim that Klink's Second Amended Complaint is deficient because he voluntarily resigned from his position and, thus, cannot allege a cognizable constitutional violation. (D.I. 17 at 11.) Klink contends that he has properly alleged that he was constructively discharged from his position and, therefore, deprived of his protected property interest in his position with the Smyrna PD in violation of his right to procedural due process. (D.I. 16-1 ¶61-65.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(internal quotations omitted). Qualified immunity is an immunity from suit, "rather than a mere defense to liability." *Hubbard v. Taylor*, 399 F.3d 150, 167 (3d Cir. 2005). The appropriate analysis to determine whether qualified immunity applies is whether the plaintiff has established facts that "make out a violation of a constitutional right" and whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

6

To establish a claim under § 1983 for deprivation of procedural due process, a plaintiff must prove that he was deprived of a property interest under the color of state law and the procedures available to him did not provide him with due process. *Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995). If a protected property interest "has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard." *Rusnak v. Williams*, 44 Fed. App'x. 555, 558 (3d Cir. 2002). As a general rule, "voluntary separation cannot serve as a basis for a due process claim and resignation is presumed to be voluntary." *Stiner v. Univ. of Del.*, 2004 WL 1949545 (D. Del. Aug. 27, 2004); citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227-28 (3d Cir. 1998). "This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured." *Leheny*, 183 F.3d at 228. Resignation is deemed involuntary in two circumstances: (1) the employer forces the resignation or retirement by coercion or duress, or (2) the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee. *Rusnak*, 44 Fed. App'x at 558.

Klink alleges a violation of his due process rights because his resignation was involuntarily procured. (D.I. 19 at 10.) Defendants argue that Klink has not pled a plausible procedural due process violation because he voluntarily resigned from his job. (D.I. 7 at 10.) Defendants argue that Klink's Second Amended Complaint and its incorporation of the transcribed conversation shows he voluntarily resigned because he was not faced with a decision between termination and resignation, and that Wood offered Klink the opportunity to be suspended pending a hearing. (D.I. 17 at 12.) Klink responds that based on Wood's actions, his resignation was coerced and offered under duress. (D.I. 19 at 10.)

The court must determine whether, considering the facts in the light most favorable to Klink, he was constructively discharged. Voluntariness is what distinguishes constructive

7

discharge from a resignation. In order to be voluntary, a decision must be informed, free from fraud or other misconduct, and made after due consideration. *Baker v. Consol. Rail Corp.*, 835 F. Supp. 846, 852 (W.D. Pa. 1993), *aff'd*, 30 F.3d 1484 (3d Cir. 1994). A court may find a resignation to be involuntary if induced by coercion or duress thereby "abrogat[ing] his ability to exercise free choice." *Rusnak*, 44 Fed. App'x at 558.

Klink claims that an examination of the surrounding circumstances suggests that his resignation was not the product of free choice. First, Klink alleged facts that suggest that he was pressured to make an immediate, on-the-spot decision between resigning and facing administrative leave pending an investigation. (D.I. 16-1 at Ex. A at 24-25.) Next, Klink was only permitted to consult an attorney in the presence of Wood who interrupted their conversation to speak with the attorney himself. (D.I. 16 at ¶ 40-47, Ex. A. at 33.) Finally, Klink discovered that Wood preemptively cut off Klink's access to his work computer and his office sometime before Klink decided to resign. (D.I. 16-1 at ¶ 48.) These factual allegations are sufficient to state a plausible claim that Klink was constructively discharged from his position at the Smyrna Police Department.

### 2. *Delaware Whistleblowers' Protection Act*

Defendants next argue Klink failed to allege a violation of Delaware's Whistleblowers' Protection Act ("WPA"). 19 Del. C. § 1701 et seq. Section 1703 provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment:
>
> (1) Because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false.

19 Del. C. § 1703. Defendants argue that Klink was not a whistleblower because he held on to the information regarding Wood's misconduct and divulged it only after separating

8

from the Smyrna PD. (D.I. 7 at 13.) Klink argues that Defendants feared that Klink would cooperate with the Delaware Attorney General investigation and would corroborate allegations of illegal and unconstitutional conduct committed by Defendants. (D.I. 8 at 14.) Both parties were aware that, following the vote of "no confidence," the Delaware Attorney General would conduct an investigation involving Wood. (D.I. 16-1 at ¶ 58-59.) After the vote, Klink alleges that he discovered the citizen complaint, which he believed was planted by Wood or someone acting on Wood's behalf to frame Klink. (D.I. 16-1 at ¶22-23.) The transcript attached to the Second Amended Complaint includes additional facts that suggest that Wood sought to prevent Klink from divulging his knowledge of Wood's misconduct to others. (D.I. 16-1 at Ex. A at 18-21.) It seems evident that Klink has plead sufficient facts to support a claim under Delaware's WPA.

### B. Klink's Motion to Amend Would Not Cause Undue Prejudice

Defendants, the non-movant, "bears the burden of proving that actual prejudice will result from amendment of a complaint." *See Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 244, 251 (D. Del. 2009). Defendants cannot meet this standard. In fact, Klink's amendment accords with Defendants' request in its second Motion to Dismiss to dismiss Benton and James as defendants. (D.I. 7 at 9-10.) Further, Klink claims—and Defendants do not dispute—that Defendants threatened to file a Rule 11 motion if Klink did not propose the instant motion to amend. (D.I. 19 at 10.) Klink, again, acted in conformity with Defendants' request. Finally, Klink adds no additional arguments, but only seeks to add additional factual information from the transcript, which Defendants gave Klink on June 1, 2017—well after the briefing was completed for

9

Defendants' second Motion to Dismiss. (D.I. 7 at 4.) Therefore, the court finds that Klink's Second Amended Complaint will not prejudice Defendants.

## V. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Motion to Amend. (D.I. 16.) Thus, Defendants' Second Motion to Dismiss for Failure to State a Claim (D.I. 7) is moot.

January 9, 2018

UNITED STATES DISTRICT COURT JUDGE

10